UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CHRISTOPHER MCCONNELL et al., §
§
    *Plaintiffs*, §
§
v. § Civil Action No. 3:20-CV-1457-X
§
SOUTHWESTERN BELL §
TELEPHONE LP et al., §
§
    *Defendants*. §

## MEMORANDUM OPINION AND ORDER

Christopher McConnell, Cynthia Dallas, Regina Hernandez, Randy Johnson, Cassandra Mergerson, Yolanda Thrash, and Cheryl Brown (collectively, "the Employees") move for attorney fees. [Doc. No. 56]. For the reasons below, the Court **GRANTS** the motion and **ORDERS** Defendants to pay $100,751.80 in attorney fees.

## I. Background

The Employees previously worked for Southwestern Bell Telephone L.P. and AT&T Services, Inc. (collectively, "AT&T") in AT&T's call center. The Employees claim that AT&T shorted them on overtime pay. Initially, the Employees joined a conditionally certified collective action pending before this Court. But the Court decertified that collective action, so the Employees initiated the instant suit against AT&T under the Fair Labor Standards Act ("FLSA"). After the parties engaged in significant discovery, AT&T made each Employee an offer of judgment, each Employee accepted that offer, and the Court entered judgment. AT&T's offers of judgment totaled $2,422.74, with each Employee receiving a portion of that amount.

1

The Employees have submitted proof of fees for five attorneys—J. Derek Braziel, Glen Dunn, Jeffrey Brown, Elizabeth Beck, and Michael Hallock—and one paralegal, Maria Ruiz.  The Employees request $209,000.25 in attorney fees.

## II.   Legal Standards

After a plaintiff prevails in a FLSA case, "[t]he court . . . shall . . . allow a reasonable attorney's fee to be paid by the defendant."[1]  "Once [a] district court concludes that a party is entitled to attorneys' fees, it must utilize the lodestar method to determine the amount to be awarded."[2]  The lodestar method requires the Court to "determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating attorneys, and then multiply the two figures together to arrive at the 'lodestar.'"[3]  After that multiplication, the Court may adjust that number "upward or downward, depending on the circumstances of the case."[4]

A plaintiff seeking attorney fees has the burden of "showing the reasonableness of the hours billed and that billing judgment was exercised."[5]  "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant."[6]

---

[1] 29 U.S.C. § 216(b).

[2] *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997).

[3] *Id.* (cleaned up).

[4] *Id.*

[5] *Tovar v. Sw. Bell Tel., L.P.*, No. 3:20-CV-1455-B, 2022 WL 2306926, at *4 (N.D. Tex. June 27, 2022) (Boyle, J.).

[6] *Id.* (cleaned up).

### III.  Analysis

The Employees assert that Braziel billed 130.7 hours at a rate of $650 per hour, Dunn billed 180 hours at a rate of $595 per hour, Brown billed 19.95 hours at a rate of $590 per hour, Beck billed 4.6 hours at a rate of $350 per hour, Hallock billed 6.3 hours at a rate of $495 per hour, and Ruiz billed 3.2 hours at a rate of $195 per hour.[7] The Court considers (A) hourly rates, (B) hours expended, and (C) lodestar adjustments.

### A.  Reasonable Hourly Rates

The Employees request the following hourly rates: $650 for Braziel, $595 for Dunn, $590 for Brown, $350 for Beck, $495 for Hallock, and $195 for Ruiz.  The Court considers each in turn.

To determine whether an attorney's hourly rate is "reasonable," the Court must rely on "the prevailing rate . . . [in] the community in which the district court sits."[8]  As the Northern District of Texas recently found, "[r]ecent unpaid overtime

---

[7] The Employees' math seems to be a bit off.  That's not shocking, as their lawyers made a similar error in a related case.  *See id.* at *2 n.7 ("The actual sum of charges between the three attorneys is $92,777.75, but Plaintiffs claim $92,777.45 in their motion.").  The Employees assert that Braziel worked 130.7 hours at a rate of $650 per hour, which equals $84,955.  Doc. No. 57-2 at 1–8. They assert that Ruiz worked 3.2 hours at a rate of $195 per hour, which equals $624.  *Id.*  They assert that Beck worked 4.6 hours at a rate of $350 per hour, which equals $1,610.  *Id.*  They assert that Dunn worked 180 hours at a rate of $595, which equals $107,100.  Doc. No. 57-4 at 1–9.  They assert that Hallock billed 6.3 hours at a rate of $495 per hour, which equals $3,118.50.  Doc. No. 57-4 at 1–9. They assert that Brown billed 19.95 hours at a rate of $590 per hour, which equals $11,770.50.  Doc. No. 57-7 at 1–4.  But the Employees only seek $11,602.75 for Brown.  *Id.* at 4.  That's likely because Brown appears to have erroneously reduced his rate to $490 for one of his entries and $59 for another. *Id.* at 4, 2.  In any event, adding those numbers ($84,955 + $624 + $1,610 + $107,100 + $3,118.50 + $11,602.75), the Court gets $209,010.25, which is $10 more than the $209,000.25 that the Employees requested.  Because the Employees don't show their work, the Court cannot determine where they took $10 off their requested fees.  In any event, the Court will determine the appropriate attorney fees based on the lodestar method, regardless of the Employees' math error and regardless of Brown's erroneous billing rates.

[8] *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (cleaned up).

cases indicate a range of $300–410 per hour for attorneys with substantial FLSA experience."[9]  And, in that case, the court even expanded the range, awarding $450 per hour for an experienced attorney.[10]  Predictably, attorneys with more experience trend towards the top end of that range.  For instance, an attorney with twenty years of experience received $410[11] and an attorney with "significant experience" received $400 in the Southern District of Texas.[12]  Conversely, courts have found reasonable rates for younger attorneys on FLSA matters to be closer to $275 or $300.[13]  For instance, the Northern District of Texas found that $300 per hour was a reasonable rate for an attorney with four to seven years of experience.[14]  In light of those numbers, the Court evaluates each attorney's hourly rate.

First, Braziel has twenty-seven years of labor and employment experience and has acted as lead counsel in over 200 overtime cases.[15]  Given Braziel's significant experience, the Northern District of Texas recently found that a "reasonable hourly

---

[9] *Tovar*, 2022 WL 2306926, at *3.

[10] *Id.* at *4.

[11] *Meadows v. Latshaw Drilling Co.*, No. 3:15-CV-1173-N, 2020 WL 291582, at *3 (N.D. Tex. Jan. 21, 2020) (Godbey, J.).

[12] *Sheffield v. Stewart Builders, Inc.*, No. CV H-19-1030, 2021 WL 951897, at *5 (S.D. Tex. Mar. 10, 2021).

[13] *Meadows*, 2020 WL 291582, at *3 ("Plaintiffs' attorneys' rates range from $275.00 to $410.00 for 3.5 to 21 years of experience."); *Sifuentes v. KC Renovations, Inc.*, No. 5-19-CV-00277-RBF, 2022 WL 1050381, at *4–5 (W.D. Tex. Apr. 6, 2022) (finding a reasonable rate of $300 for an attorney when there was "no evidence that [he] has any lead counsel experience").

[14] *Williams v. Sake Hibachi Sushi & Bar Inc.*, 574 F. Supp. 3d 395, 410 (N.D. Tex. 2021) (Fitzwater, J.), *appeal dismissed*, No. 21-11287, 2022 WL 2337672 (5th Cir. Mar. 16, 2022).

[15] Doc. No. 57-1 at 1–6.

rate[] in the Dallas community [is] $450 for Mr. Braziel."[16]   The Court agrees. Braziel's reasonable hourly rate is $450.

AT&T disagrees, contending that Braziel should receive an hourly rate of $350. Specifically, in a 2015 case, the Western District of Texas found that Braziel's reasonable rate was $350 per hour.[17]   Three years later, the Northern District of Texas cited that 2015 case and decided to "follow[] suit," concluding that "$350.00 per hour [is] a reasonable rate for Braziel."[18]   Thus, the argument goes, the Court shouldn't stray from those precedents.  But that's wrong.  On AT&T's logic, Braziel's hourly rate is frozen in 2015—even though he has since accumulated seven additional years of experience and rampant inflation has increased attorneys' hourly rates.[19]  Further, that argument ignores the Northern District of Texas's more recent statement that a "reasonable hourly rate[] in the Dallas community [is] $450 for Mr. Braziel."[20]

Second, Dunn has over twenty years of experience and has been lead counsel in more than fifty wage and hour cases.[21]   Given Dunn's significant experience, the

---

[16] *Tovar*, 2022 WL 2306926, at *4.

[17] *Rodriguez v. Mech. Tech. Servs.*, No. 1:12-CV-710-DAE, 2015 WL 8362931, at *6 (W.D. Tex. Dec. 8, 2015).

[18] *Leal v. All-City Trailer Repair, L.P.*, No. 3:16-CV-03274-N, 2018 WL 4913786, at *2 (N.D. Tex. Oct. 10, 2018) (Godbey, J.).

[19] *Cf. Sifuentes*, 2022 WL 1050381, at *5 (recognizing that 2015 rates don't "account for an increase in rates since 2015").

[20] *Tovar*, 2022 WL 2306926, at *4.

[21] Doc. No. 57-3 at 2.

Northern District of Texas recently found that $412 was a reasonable hourly rate for Dunn.[22]  The Court agrees.  Dunn's reasonable hourly rate is $412.

Third, the Employees provide no information about Brown's experience or proficiency in FLSA matters.  Similarly, the Employees aver that Beck is "a 4th year lawyer," but they provide no other information about her FLSA experience.[23]  That's a problem for the Employees because "[t]he party seeking attorney's fees bears the burden of establishing the reasonableness of the rates billed."[24]  Without such information, the Court must ascertain a reasonable rate for a lawyer with less experience than Dunn or Braziel.  The Court finds that, on the evidence before it, $300 is a reasonable rate for Brown and Beck.[25]

Fourth, Hallock is a "16-year senior litigation associate" who spent "7+ years of his career at the United States Attorney's office for the Southern District of Illinois."[26]  As the Employees admit, Hallock has "zero FLSA experience."[27]  Given Hallock's significant experience outside the FLSA context, the Court finds that his

---

[22] *Tovar*, 2022 WL 2306926, at *4.

[23] Doc. No. 56 at 9.

[24] *Furlow v. Bullzeye Oilfield Servs.*, No. SA-15-CV-1156-DAE, 2019 WL 1313470, at *3 (W.D. Tex. Jan. 3, 2019), *report and recommendation adopted*, No. 5:15-CV-1156-DAE, 2019 WL 1313454 (W.D. Tex. Jan. 29, 2019).

[25] *Cf. Richards v. AT&T Servs.*, No. SA-20-CV-00685-JKP, 2022 WL 2307472, at *4 (W.D. Tex. June 27, 2022) ("Plaintiffs offer no evidentiary support or any justification for Mr. Brown's hourly rate. Nothing in the record explains his qualifications or longevity.  For this reason, the Court has no justifiable basis to award an hourly rate above the median rate [in San Antonio, Texas] of $258/hour for Mr. Brown.").

[26] Doc. No. 57-3 at 5.

[27] Doc. No. 66 at 10.

reasonable hourly rate is higher than Beck's or Brown's.[28]   Hallock's reasonable hourly rate for FLSA matters is $320.

Fifth, Ruiz is a paralegal.  Beyond that, the Employees provide no information concerning Ruiz's experience.  Courts have found that "$95.00 per hour is the reasonable market rate for paralegal work in the Northern District of Texas."[29] Recently, the Western District of Texas found that, for a paralegal with "approximately 13 years of experience," a reasonable hourly rate was $135.[30]  The Northern District of Texas recently found that, for a paralegal "with more than 30 years' experience," a reasonable hourly rate was $210.[31]  Because the Court has no information concerning Ruiz's experience, the Court will increase the $95 baseline only to account for inflation.  On the evidence before the Court, Ruiz's reasonable hourly rate is $100.

AT&T requests even greater reductions across the board, citing two surveys from the Texas State Bar called "2019 Income and Hourly Rates" and "2015 Hourly Fact Sheet."[32]  The Court finds neither survey persuasive.  The Fifth Circuit has acknowledged the 2015 Fact Sheet's "age, provision of median rates only, and reflection of low response rates" and has thus warned of "the Fact Sheet's probative

---

[28] *See, e.g.*, Doc. No. 63 at 18 (acknowledging Hallock should have a higher hourly rate than Beck).

[29] *Collins v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-694-BH, 2022 WL 1173804, at *4 (N.D. Tex. Apr. 20, 2022) (Ramirez, M.J.) (cleaned up).

[30] *Sifuentes*, 2022 WL 1050381, at *5.

[31] *Hill v. Schilling*, No. 3:07-CV-2020-L, 2022 WL 1321548, at *4 (N.D. Tex. May 3, 2022) (Lindsay, J.), *appeal dismissed sub nom. Hill v. Washburne*, No. 22-10565, 2022 WL 17423449 (5th Cir. July 1, 2022).

[32] Doc. No. 63 at 12.

limitations."[33]  In fact, "the Texas Bar itself warns against using the Fact Sheet to set attorney fees."[34]  Even the more recent "State Bar data, which only report[s] median rates, do[es] not account for the rate that might be reasonably charged by an attorney with significant experience or expertise in the field, nor does it account for increases in rates since [its] publication in . . . 2019."[35]  Accordingly, the Court declines to follow the Texas State Bar's data.

## B. Reasonable Hours Expended

The Employees assert that Dunn billed 180 hours, Braziel billed 130.7 hours, Brown billed 19.95 hours, Hallock billed 6.3 hours, Beck billed 4.6 hours, and Ruiz billed 3.2 hours.  Although the Employees have the burden "of establishing the number of hours expended," the Court may use the attorneys' "hours recorded as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented."[36]  AT&T asserts that the Employees' claimed time entries are  (1) duplicative,  (2) clerical,  (3) unrelated,  (4) unintelligible,  (5) inconsistent, (6) post-withdrawal, and (7) subject to reallocation.  The Court considers each in turn.

### 1. Duplicative Work

"The court should exclude all time that is . . . duplicative."[37]  For instance, the Northern District of Texas has excluded time "entries containing identical write-ups

---

[33] *Alvarez v. McCarthy*, No. 20-50465, 2022 WL 822178, at *5 (5th Cir. Mar. 18, 2022).

[34] *Diocesan Migrant & Refugee Servs. v. United States Immigration & Customs Enf't*, No. EP-19-CV-00236-FM, 2021 WL 289548, at *12 (W.D. Tex. Jan. 28, 2021).

[35] *Tovar*, 2022 WL 2306926, at *3.

[36] *Id.* at *4.

[37] *Jimenez v. Wood Cnty.*, 621 F.3d 372, 379–80 (5th Cir. 2010), *on reh'g en banc*, 660 F.3d 841 (5th Cir. 2011).

submitted by different attorneys on the same day or entries that refer to the same tasks on the same document."[38]   AT&T provides myriad examples of duplicative billing.[39]   Accordingly, the Court reduces Dunn's hours by 3.2, Braziel's hours by 1.2, and Brown's hours by 1.1.[40]

## 2.  Clerical Tasks

"Clerical work is not recoverable in an award of attorneys' fees."[41]   "Clerical duties consist of . . . reviewing court notices, scheduling, notifying clients and counsel of deadlines, preparing filings, maintaining files, copying, printing, labeling, and emailing documents, and communicating with court staff."[42]   AT&T identifies several examples of clerical work, including Dunn's myriad 0.1 hour "entries for 'Receipt and review of email from ECF.'"[43]   The Northern District of Texas recently found, consistently with courts across the country, that "reflexive billing for receipt of every ECF notification and time billed for calendaring meetings[] are clerical entries and should be stricken."[44]   The Court agrees and reduces Dunn's time by 15.5 hours, Braziel's time by 2.5 hours, and Brown's time by 1.35 hours.[45]

---

[38] *Tovar*, 2022 WL 2306926, at *4.

[39] Doc. No. 64-1 at 3.  Although the Employees protest that some of those duplicative entries were appropriate, they have failed to show that any of those entries aren't, in fact, duplicative.  Doc. No. 66 at 17.

[40] *Id.* at 4.

[41] *Black v. SettlePou, P.C.*, No. 3:10-CV-1418-K, 2014 WL 3534991, at *6 (N.D. Tex. July 17, 2014) (Kinkeade, J.).

[42] *Meadows*, 2020 WL 291582, at *4.

[43] Doc. No. 63 at 19 (citation omitted).

[44] *Tovar*, 2022 WL 2306926, at *5 (collecting cases).

[45] AT&T requests that the Court reduce Dunn's time by 21.8 hours, Braziel's time by 3.4 hours, and Brown's time by 2.25 hours.  Doc. No. 64-1 at 10.  But, in AT&T's list of purportedly clerical entries, it attempts to smuggle myriad entries that don't appear to be clerical.  *See id.* at 5–10 (containing non-

The Employees disagree, contending that Dunn didn't merely review the ECF emails "but also viewed the associated filing and then directed a member of the staff to take the appropriate action."[46]  But Dunn's time entries don't specify that Dunn communicated with staff concerning those emails.[47]  And, as the Employees admit, "Dunn did not bill for the review of the ECF attachment or for the managerial actions."[48]  The Employees have not shown that Dunn's review of the ECF emails was anything more than clerical, and they have not responded to the other entries AT&T identifies as clerical.

### 3.  Unrelated Work

AT&T asks the Court to exclude a variety of entries that are allegedly unrelated to the instant matter, such as entries concerning "decertification of Plaintiffs' claims in [a separate] case," "admission to the Western District of Texas," and "entries related to plaintiffs in other cases."[49]  The Employees only address the

---

clerical entries on 8/11/2020 (beginning "Telephone conference"); 9/2/2020; 9/15/2020 (all entries); 9/16/2020; 9/24/2020; 10/2/2020 (beginning "Email exchange," "Receipt and review," and "Receipt and review"); 10/6/2020; 10/22/2020; 10/26/2020 (all entries); 11/3/2020 (beginning "Telephone conference" and "Receipt and review"); 11/5/2020; 11/23/2020 (all entries); 11/25/2020 (beginning "Draft and send"); 12/7/2020; 12/8/2020 (beginning "Receipt and review"); 12/18/2020; 1/15/2021; 2/1/2021 (beginning "Draft and send," "Receipt and review," "Receipt and review," and "from Opposing"); 3/12/2021 (all entries); 4/13/2021 (beginning "Receipt and review"); 5/21/2021 (all entries); 5/28/2021; 6/21/2021; 7/8/2021 (all entries); 7/20/2021; 7/21/2021; 7/26/2021; 7/27/2021 (beginning "Receipt and review of email from Opposing Counsel regarding Document"); 7/29/2021; 7/30/2021; 8/11/2021; 8/12/2021 (beginning "Draft and send"); 8/13/2021; 8/24/2021; 8/25/2021 (all entries); 8/26/2021; 8/30/2021; 12/7/2021 (beginning "Draft and send"); 1/11/2022; 1/14/2022; 1/27/2022 (all entries); and 2/1/2022 (beginning "Draft and send")).  Those entries account for 6.3 hours of Dunn's time, 0.9 hours of Braziel's time, and 0.9 hours of Brown's time.  Accordingly, the Court subtracts those hours from AT&T's requested hour reduction.

[46] Doc. No. 66 at 16.

[47] *See, e.g.*, Doc. No. 57-4 at 8 ("Receipt and review of email from ECF regarding Dkt. 43.").

[48] Doc. No. 66 at 16.

[49] Doc. No. 63 at 20–21.  AT&T also asks the Court to strike entries "that do not correspond with the timing on the Court's docket."  *Id.* at 21.  Although AT&T quibbles with the timing of those

first of those complaints, explaining that, following decertification of the collective action related to this matter, their counsel "had to have a discussion with each of the 289 opt-ins regarding whether they wished to pursue individual claims" and that such discussions "marked the beginning of this cause of action."[50]  The Court agrees, so it won't strike those entries.

But the Employees have not justified the entries for admission to the Western District of Texas or entries related to plaintiffs in other cases.  As the Northern District of Texas recently concluded, "entries that explicitly refer to other parties not represented in this case should be disallowed."[51]  Accordingly, the Court strikes those time entries related to admission to the Western District of Texas or plaintiffs in other cases.  Specifically, the Court reduces Dunn's time by 0.4 hours, Brown's time by 0.8 hours, and Braziel's time by 0.1 hours.[52]

### 4.  Unintelligible Entries

For an entry to qualify as part of the "reasonable number of hours expended on the litigation,"[53] its description generally must contain some "hints or context clues to shed light on what [the] entr[y] . . . entailed."[54]  AT&T argues that some of the

---

entries, it doesn't assert that those entries are unrelated to the instant case or cite caselaw allowing the Court to discard such entries.  Accordingly, the Court declines AT&T's invitation to strike those entries.

[50] Doc. No. 66 at 17.

[51] *Tovar*, 2022 WL 2306926, at *5.

[52] *See* Doc. No. 64-1 at 11 (containing entries related to Western District of Texas admission or other plaintiffs on 6/8/2020 (all entries); 12/7/2020; and 2/1/2022).

[53] *Wegner*, 129 F.3d at 822 (cleaned up).

[54] *Aguayo v. Bassam Odeh, Inc.*, No. 3:13-CV-2951-B, 2016 WL 7178967, at *12 (N.D. Tex. Dec. 8, 2016) (Boyle, J.).

entries don't contain enough context to determine what activity actually occurred. The Employees provide no response. The Court agrees with AT&T and reduces Braziel's time by 68.1 and Ruiz's time by 2 hours.[55]

### 5. Inconsistent Entries

AT&T asserts that both Dunn and Dunn's office manager, Pongpak Deepipat—in an affidavit—take credit for "creating [] pivot tables and analysis."[56]  The Employees explain this supposed inconsistency, noting that "Mr. Dunn often sat with Mr. Deepipat during these reviews [of the tables], because the data was rarely easy to interpret."[57]  On the same facts, the Northern District of Texas recently concluded in a related case that the Employees' "explanation [was] persuasive," and the Court agrees.[58]  The Court will not strike Dunn's entries concerning the pivot tables and analysis.

### 6. Post-Withdrawal Work

AT&T notes that Brown lists six entries for receiving and reviewing e-mails and documents related to this case after he withdrew from his representation. The Employees provide no response. The Court agrees with AT&T.  Brown billed precisely 0.25 hours for each correspondence—sometimes without providing any

---

[55] AT&T asks the Court to reduce Braziel's hours by 71.5 and Ruiz's hours by 2.  Doc. No. 64-1 at 16.  But some of the entries are intelligible.  *See id.* at 12–16 (including intelligible entries on 9/15/2020; 9/16/2020; 10/11/2020 (starting "legal analysis and factual analysis re settlement"); 10/23/2020 (starting "review RFP"); 11/5/2020; 1/15/2021; and 8/27/2021 (starting "draft and revise")). Accordingly, the Court subtracts 3.4 hours of Braziel's time from AT&T's requested reduction.

[56] Doc. No. 63 at 21.

[57] Doc. No. 66 at 12.

[58] *Tovar*, 2022 WL 2306926, at *5.

indication that he even reviewed the correspondence.[59]  It's unclear why Brown's receiving an e-mail would take fifteen minutes.  And some of those e-mails merely "provid[e] [a] link to document production," so it's particularly unclear why Brown would need fifteen minutes to receive such an email.  In short, the Employees have not carried their burden of showing that Brown's post-withdrawal hours are reasonable.  Accordingly, the Court will reduce Brown's hours by 1.75 hours.[60]

### 7. Reallocation

AT&T argues that "far too much of the work was done by senior attorneys" in this matter.[61]  Thus, the argument goes, the Court should "reallocate[]" many of the hours billed by the senior attorneys to more junior attorneys.[62]  The Northern District of Texas recently rejected that argument in a related case, concluding that "this strategy . . . is not supported by the caselaw."[63]  The Court agrees.  AT&T hasn't provided any on-point caselaw permitting the Court to artificially transfer one attorney's hours to his co-counsel, so the Court declines to engage in any such reallocation.

---

[59] *See, e.g.*, Doc. No. 57-7 at 4 ("Received correspondence from OC providing link to document production.").

[60] *See* Doc. No. 64-1 at 18.

[61] Doc. No. 63 at 22.

[62] *Id.* at 23.

[63] *Tovar*, 2022 WL 2306926, at *6.

13

In sum, the Court awards the Employees attorney fees in the amount of $100,751.80. That consists of $66,290.80 for Dunn's time,[64] $26,460 for Braziel's time,[65] $4,485 for Brown's time,[66] $2,016 for Hallock's time,[67] $1,380 for Beck's time,[68] and $120 for Ruiz's time.[69]

## C. *Johnson* Factors

Once a court has determined the proper lodestar amount, "there is a strong presumption that the lodestar figure is reasonable."[70] A litigant can overcome that presumption only in "rare circumstances" when "the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee."[71] Those factors include

> (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or

---

[64] The Employees request 180 hours for Dunn. The Court has reduced those hours by 3.2 hours, 15.5 hours, and 0.4 hours. That leaves 160.9 hours at a rate of $412 per hour, which equals $66,290.80.

[65] The Employees request 130.7 hours for Braziel. The Court has reduced those hours by 1.2 hours, 2.5 hours, 0.1 hours, and 68.1 hours. That leaves 58.8 hours at a rate of $450 per hour, which equals $26,460.

[66] The Employees requested 19.95 hours for Brown. The Court has reduced that time by 1.1 hours, 1.35 hours, 0.8 hours, and 1.75 hours. That leaves 14.95 hours at a rate of $300 per hour, which equals $4,485.

[67] The Court has not reduced Hallock's hours. Hallock billed 6.3 hours at a rate of $320 per hour, which equals $2,016.

[68] The Court has not reduced Beck's hours. Beck billed 4.6 hours at a rate of $300 per hour, which equals $1,380.

[69] The Employees requested 3.2 hours for Ruiz. The Court has reduced Ruiz's hours by 2 hours. That leaves 1.2 hours at a rate of $100 per hour, which equals $120.

[70] *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010) (cleaned up).

[71] *Id.*

circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[72]

First, AT&T focuses on that eighth factor, noting the "low judgment amount of $2,422.74" and thus arguing that the Employees' attorneys weren't all that successful.[73]  Further, AT&T argues, the ratio between the proposed attorney fees ($209,000.25) and the judgment amount ($2,422.74) contravenes caselaw disallowing such extreme ratios and requiring proportionality.[74]

The Court disagrees.  "[T]here is no *per se* proportionality rule."[75]  And strict proportionality would contravene "the FLSA attorneys' fee provision, which provides an incentive for attorneys to take up meritorious claims that would ordinarily result in relatively small awards."[76]  Thus, it's unsurprising that, in the FLSA context, "the difference in the results achieved and the attorneys' fees awarded is likely to be substantial."[77]

Second, AT&T argues that the second *Johnson* factor supports a downward adjustment because "[t]his was a straightforward case that did not present

---

[72] *Saizan v. Delta Concrete Prods.*, 448 F.3d 795, 800 n.18 (5th Cir. 2006) (per curiam).

[73] Doc. No. 63 at 24.  AT&T also presents the same argument under the twelfth *Johnson* factor. *Id.* at 30.

[74] *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (5th Cir. 1998) (rejecting an attorney fee award where the plaintiff "sought over twenty-six times the damages actually awarded" and recognizing that some "ratios are simply too large to allow the fee award to stand").

[75] *Saizan*, 448 F.3d at 802.

[76] *Tovar*, 2022 WL 2306926, at *6.

[77] *Id.*

complicated legal issues."[78]   The Court disagrees.   AT&T provided "hundreds of thousands of lines of raw data" during discovery that the Employees' counsel had to sift through, which added factual complexity to this case.[79]   Accordingly, the Court will not adjust downward on the ground of simplicity.

Third, AT&T confusingly contends that the fourth *Johnson* factor supports a downward adjustment because the Employees' "senior lawyers were precluded from taking on other matters by their work on this case" only because they "perform[ed] nearly all tasks personally rather than engaging in appropriate delegation to more junior lawyers."[80]   AT&T doesn't explain how the lawyers' preclusion from other matters supports a downward adjustment, so its curt *non sequitur* fails to show that this is the sort of "rare case" on which the Court should adjust downward.

## IV.  Conclusion

For the foregoing reasons, the Court **GRANTS** the motion and **ORDERS** AT&T to pay the Employees $100,751.80 in attorney fees.

**IT IS SO ORDERED** this 2nd day of February, 2023.

_____

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[78] Doc. No. 63 at 28.

[79] Doc. No. 66 at 15.

[80] Doc. No. 63 at 29.

16